<u>AFFIDAVIT</u>

I, Thomas Crowley, having been duly sworn, on oath depose and state that:

1. I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") where I have worked for approximately 29 years. During my law enforcement career, I have participated in investigations involving firearms and drug trafficking, firearms possession by prohibited persons, and use of firearms in furtherance of drug trafficking crimes, many of which have occurred in and around Boston, Massachusetts.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm in or affecting interstate commerce. I am also aware that Title 21, United States Code, Section 841(a) makes it a federal offense for any person to distribute a controlled substance such as cocaine base, a/k/a "crack cocaine." Having so stated, I make this affidavit in support of a complaint charging **DIAMOND BRITO** with having distributed cocaine base on January 5, 2016 and, on that same

1

date, having sold (and therefore also having been in possession of) two firearms, all in violation of these statutes.

3. The statements contained in this affidavit are based on my participation in this investigation, speaking with other ATF Agents involved in the investigation and on information provided to me by officers of the Boston Police Department ("BPD"). This affidavit is submitted for the limited purpose of establishing probable cause to believe **BRITO** violated 18 U.S.C. §922(g)(1) and 21 U.S.C. § 841(a). It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4. The investigation into **BRITO** began in late 2015 when an ATF cooperating witness met with **BRITO** and made a controlled purchase of cocaine base from **BRITO** in the area of Dudley Square. Two ATF cooperators (hereinafter referred to as "CW-1" and "CW-2"), thereafter made a series of controlled purchases of firearms and/or cocaine base from **BRITO**. Like the January 5, 2016 buys described below, these controlled purchases were done under the supervision of myself and other law enforcement officers from the ATF and the Boston Police Department and were recorded on video.

2

5. The purchase of cocaine base and two firearms from **BRITO** on January 5, 2016 was initiated shortly before noon when myself and other agents met with CW-1 in anticipation of making the charged gun and drug purchase from **BRITO**.[1] At approximately 11:50am, CW-1 placed a call to **BRITO** at 857-261-4607 and confirmed that **BRITO** had two firearms and "200 of candy" (slang for an ball of crack cocaine) to sell and that they would meet the Washington Park Mall in Roxbury to conduct it.

6. Following the completion of this telephone call, both the CW and his car were searched for contraband or excess cash with negative results. Audio/video recording equipment was installed in the CW's automobile, the CW was provided with a transmitter and $2100 in agency funds with which to purchase the two firearms and drugs from **BRITO,** and directed to the Washington Park Mall located at 333 Warren Street in Dudley Square.

7. We followed the CW to the Washington Park Mall, where he arrived shortly after noon. Simultaneously, other agents followed **BRITO** (who was wearing a blue hoodie) from his residence in Roxbury

---

[1] CW-1 is an individual with a minor criminal record which consist of a 2008 arrest for Auto Theft in a Southern state. CW-1 was cooperating with ATF for solely for monetary compensation. CW-1 was paid a total of $12,650 in consideration for his work in this investigation.

to the Washington Park Mall. Although **BRITO** arrived at the Washington Park Mall at around 12:07pm, he did not immediately get in CW-1's car because of a BPD Prisoner Transport Vehicle parked in the area.

8. **BRITO** was observed entering the CW's car at 12:18pm and stayed there for approximately 10 minutes. During that period, I heard conversation consistent with a gun/drug sale and heard **BRITO** and the CW counting money. **BRITO** was seen getting out of the CW's car at approximately 12:28pm.

9. Once **BRITO** had left the area, we followed the CW back to an agreed upon meeting location where the CW turned over to Agents a Tangolfo Model Witness .9mm semiautomatic pistol bearing serial number DC071, a FIE Model S38 revolver bearing serial number ST07390 ("hereinafter referred to as "the charged guns"), and a plastic bag containing a quantity of what was identified as crack cocaine, all of which he stated were sold to him by **BRITO** in exchange for $2100 in ATF funds while parked in the CW's car. The CW also provided Agents with the transmitter and he and his car were searched for a second time with negative results. Agents also recovered the recording equipment that had been put in the CW's car before the planned sale took place.

10. I have reviewed the video taken during the January 5 buy. It shows that, consistent with what was reported by surveillance and by the CW, **BRITO** (wearing a blue hoody) entered the CW's car at 12:18pm. Once inside, **BRITO** displayed the charged guns to the CW and then exchanged them and a bag of what was subsequently identified to be crack cocaine for $2100 in ATF funds that both men counted out before **BRITO** left. While inside the car, **BRITO** told the CW that he would be getting more guns and that the prices would be coming down. He also assured the CW that the guns he was selling had no bodies on them and, as he left, assured the CW that he would call and that it would be "business as usual."

11. After the CW was debriefed, the drugs were inspected and identified as crack cocaine, were field tested (positive for cocaine base), and logged into evidence by BPD Detective Anthony Serra so that they could be sent to the State Police Crime Lab for further testing. The charged guns were therafter sent to BPD's Ballistic Unit where they were successfully test fired.

12. I know from my training and experiences as an ATF Agent for over twenty-five years, twenty of which I have been stationed in Massachusetts, that both of the charged firearms were manufactured outside Massachusetts, meaning that each had traveled across state

lines or international boundaries prior to being purchased in Roxbury on January 5, 2016.

13. I have reviewed **BRITO**'s criminal record as maintained by the Massachusetts Criminal History Systems Board. It revealed, among other things, that **BRITO** was convicted in Norfolk Superior Court of Kidnapping and Armed Robbery in 2012. Based on my training and experience, I know these crimes are punishable by a term of imprisonment exceeding one year under Massachusetts law.

14. Based on the foregoing, I submit that there is probable cause to believe that, on or about January 5, 2016, **DIAMOND BRITO**, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did possess, in and affecting commerce, two firearms, to wit: a Tangolfo Model Witness .9mm semiautomatic pistol bearing serial number DC071, and an FIE Model S38 revolver bearing serial number ST07390, in violation of Title 18, United States Code, Section 922(g)(1). I further submit that, on the same date (January 5, 2016), **DIAMOND BRITO** did distribute an amount of cocaine base, a/k/a "crack cocaine" in violation of Title

21, United States Code, Section 841(a).

_____
THOMAS CROWLEY
Special Agent, ATF

Sworn and subscribed to before me this ___14th___ day of October, 2016

_____
M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

